UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN DOE, | ) |
|        and | ) |
| JANE DOE | ) |
|        Plaintiffs, | ) |
|        v. | ) Case No. 1:16-CV-00253-RMC |
| MERRILL LYNCH | ) |
|        and | ) |
| BANK OF AMERICA CORP. | ) |
|        Defendants. | ) |

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BANK OF AMERICA'S MOTION TO DISMISS

COMES NOW the Plaintiff herein and through undersigned counsel files this memorandum in opposition to Bank of America's Motion to Dismiss. The Motion should be denied for a number of reasons. First, there has been no discovery undertaken herein, and as the facts would suggest Plaintiff needs discovery to elaborate on his allegations. See Greater Baltimore Ctr. For Pregnancy Concerns, Inc. v. Mayor of Baltimore, 721 F.3d 264, 281 (4th Cir. 2013) and Fed. R. Civ. P. 12(d) (parties should be given reasonable opportunity to present pertinent material means that parties must be afforded opportunity for discovery). Second, while the statutory framework cited in Defendant's motion does provide for a safe harbor for banks that close an account based on either money laundering or terrorism financing activity, no such safe harbor exists for closing

1

an account for reasons not so related. 31 C.F.R. § 1010.540(b)(1). Because customers like the Plaintiff are more expensive to service as a politically exposed person (PEP), a reasonable inference is that the bank may have just wanted to get rid of him due to increased costs and potential liability. That would be an illegal use of the information that it received from another financial institution.

Third, Plaintiff's negligence claim and breach of contract claims, including breach of the implied covenant of good faith and fair dealing, are based on the original agreement which the Plaintiff signed with Bank of America 34 years ago, noting that there is a duty of care applied to the account holder, thus resulting in validly pled causes of action for both the breach of contract claims and the negligence claims. These claims are also based on the 2015 revised agreement, which the bank claims was agreed to by Plaintiff, although provides no evidence for this assertion. Each contract contains a provision that a duty of care is owed to the account holder.

The final reason to deny the motion to dismiss is that the D.C. Circuit has concluded that even if a trial judge has found it would be difficult or improbable to prove the facts in a complaint, as Defendant argues, the case can still proceed. See Abbas v. Foreign Policy Group, LLC, 783 F. 3d 1328 (D.C. Cir. 2015) (quoting Twombly at 556). This is especially true here given the fact that not a single case cited by the Defendant from this jurisdiction actually focuses on the issue *sub judice*. They don't address the question whether a recipient bank has the protection of a safe harbor provision when it chooses to close an account for reasons other than money laundering or terrorist financing activity if seeking the protection of 31 C.F.R. § 1010.540(b)(1).

In the interest of judicial expediency, Plaintiff agrees to drop Counts III and IV

against Defendant Merrill Lynch with prejudice, but maintains the action for counts I and II of the Complaint as stated. In the event that the Court is inclined to grant the motion to dismiss, Plaintiff requests leave to amend to more fully detail his claims against Bank of America (BofA) or against Bank of America, North America (BANA) if that is deemed necessary by the Court as the proper named party against whom these claims should be asserted. The question remains, however, as to what is the identity of the entity that signed the contract Plaintiff entered into 34 years ago.

## ARGUMENT

A.  Legal Standard

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matters, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. Plausibility requires pleading facts, as opposed to conclusory allegations, and must rise above the mere conceivability or possibility of unlawful conduct that entitles to pleader to relief. Id. at 678-79. A complaint must be "factually suggestive." Twombly, 550 U.S. at 557 n.5.

A claimant must provide "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (2007) (citations and ellipsis omitted). The Court emphasized that a complaint must contain a "statement of

circumstances, occurrences, and events in support of the claim presented" and not mere conclusory statements. Id. at 556 (citing 5 Wright & Miller, Federal Practice and Procedure § 1202, at 94-95 (2004)). Although a claimant need not set out in detail the facts underlying his claim, Fed. R. Civ. P. 8(a)(2) "still requires a 'showing' . . . of entitlement to relief." Id. As a fair reading of the complaint would suggest, this Plaintiff has demonstrated an entitlement to relief.

The D.C. Circuit has recognized that "[a] well-pleaded complaint 'may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable.'" Abbas 783 F. 3d 1328 (D.C. Cir. 2015) (quoting Twombly at 556). The reason, as this Court knows, is that the Defendant always has an additional remedy to pursue before trial, i.e. if the complaint survives a motion to dismiss, a defendant may still move for summary judgment under Rule 56. Id. Thus, it is difficult for the Defendant to assert real prejudice at this early stage in the litigation, other than the fact it will have to participate in discovery. No court has ever decided that a motion to dismiss should be granted simply because a Defendant will have to engage in reasonable discovery as a result.

## FACTS

As this court knows it has to accept well pled allegations as true at this procedural stage. Abbas, 783 F. 3d 1328 (D.C. Cir. 2015). Therefore, it should deem that the following material facts have been admitted by the bank. Plaintiff had a noncommercial bank account with BofA for 34 years, and developed a solid banking relationship with its officers who serviced his needs and those of his daughter. Complaint ¶ 7. During that time, BofA officials had no issues with and never complained about how Plaintiff or his

daughter conducted their banking affairs. Complaint ¶ 8. There were no incidents of bounced checks or incidents of misdirected wire transfers, and no need to generate any Suspicious Activity Reports (SARs) in connection with activity in either account. Id.

At no time did Plaintiff ever engage in any type of questionable behavior, let alone criminal activity. Complaint ¶ 12. Nor did BofA undertake any investigation into the bona fides of these accusations by contacting the source of those accusations, for example, Merrill Lynch or FinCEN. Complaint ¶ 13. If the bank had done so, it would have concluded that any accusations of illicit activity were bogus in nature or made up for whatever reason. Complaint ¶ 14. Instead, BofA summarily and abruptly closed Plaintiff's account and that of his daughter. It did not explain the basis for such rash conduct or why it was urgent to take such remedial action. Id.

BofA owed the Plaintiff and his daughter a duty to act with reasonable care at all times. Complaint ¶ 15. BofA decided, and by so doing breached its covenant of good faith and fair dealing, that the less-expensive and easier path would be just to shut both accounts down without investigating the matter, and without explaining to the bank customers the reason for such urgent action. Id. Like all banks in the post-9/11 atmosphere, BofA feared that FinCEN could become involved if it continued to maintain these accounts. BofA, like every bank, knows that FinCEN has an array of enforcement tools which could cripple an institution. Complaint ¶ 19. BofA owed a duty to Plaintiff to investigate such spurious charges and determine whether they were bona fide. Complaint ¶ 20.

When Plaintiff opened up his account at BofA 34 years ago, he had discussions with bank officials, who assured him that he would be treated with the utmost good faith

in all of his transactions at the bank. Complaint ¶ 23. He opened the account on the basis of those representations. Id. Based on the long-term banking relationships that both Plaintiffs had with BofA, Plaintiff had assumed based on representations made by BofA oficials when he signed up for the account, that in the event there was a negative development of any nature concerning his or his daughter's account, for example a bounced check or a misdirected wire transfer, that the matter would be thoroughly investigated to determine whether the Plaintiffs were at fault. Complaint ¶ 24. He also assumed that a proper investigation would be initiated concerning the allegations made against him before taking any action, including suspending his banking privileges. Id. By deciding to summarily and abruptly close both accounts because it did not want to incur expenses such as potential liability for properly maintaining a PEP account or the costs associated with SAR reporting and/or feared regulatory involvement, BofA breached the covenant of good faith and fair dealing both expressed when the contract was entered into and implied in its dealings and in its contracts with both Plaintiffs. Complaint ¶ 26.

Plaintiff cannot explain to an alternative bank why his account had been shut down, making it appear that he is involved in some suspicious behavior. Complaint ¶ 27. Plaintiff concedes that the statutory framework relied on by the defendant contains a safe harbor provision that protects financial institutions that share information about clients if the information pertains to terrorist activity or money laundering. This Statutory framework relied upon by defendant does not, however, contain a similar safe harbor provision for a bank that receives information not so related and then takes affirmative action such as shutting down an individuals bank account.

I.     THIS CASE PRESENTS A NOVEL ISSUE IN TERMS OF A BANK'S AUTHORITY TO CLOSE DOWN CUSTOMER ACCOUNTS BASED ON THE STATUTORY FRAMEWORK RELIED ON BY DEFENDANT

Although judges hear this all the time, this is truly a case of first impression in this judicial district. While it's clear that a bank which shares information with another financial institution is immune from suit based on that activity if it is related to terrorism or money laundering, it is an open question whether a recipient bank can then turn around and shut down a customer's account for any reason at all utilizing unrelated information. 31 C.F.R. § 1010.540(b)(1). Only in those two instances does the bank secure protection of the safe harbor provision in the statute. Although the Defendant cited fifteen cases from this jurisdiction, not a single authority deals with the immunity issue arising out of the interpretation of the statutory framework. Upon reading these statutory provisions, it is obvious Congress was concerned about limiting the extent of a recipient bank's immunity. They obviously approved of blanket immunity when sharing information if the activity involves money laundering or terrorist funding activity. That is evidence of Congress' concern that banks should not be given carte blanche in terms of acting upon information received from another institution.

The other issue that Defendant does not address is the fact that Plaintiff alleges in ¶ 16, that the bank may have shut down his account simply because he is a Politically Exposed Person (PEP). As the Court probably knows, a PEP account or maintenance of a PEP account necessarily entails more overhead and expenses for the bank. Also, the bank has to hire competent and expensive personnel skilled in the application of the "know thy

customer" rule, daily account monitoring, and FinCEN rules and regulations. Even though it appears there must be evidence that the account holder was involved in money laundering or terrorist activity under the statute, Defendant does not assert this to be the case here. 31 C.F.R. § 1010.540(b)(1).  So the Court is left to speculate as to why the Plaintiff's account and his daughter's was shut down. If Plaintiff's allegation is true that they closed down his account because he is a PEP, the bank has no blanket immunity under the statute. Id. In fact, If Defendant's rationale were embraced by this court, a financial institution would have complete and unfettered discretion in terms of what to do with information received from another financial institution. That does not seem to have been Congress's intent, i.e. they limited immunity to instances involving money laundering and terrorist activity.

      Thus, even though the Defendant asserts otherwise, the reason why the account was shut down is very important, as is the original contract entered into by the parties.[1] Both go to the heart of Plaintiff's breach of contract and negligence claims. If the account was closed for an improper purpose, i.e. the high cost of maintaining a PEP account, Defendant would not be immune under the safe harbor statute framework Defendant relies on. Id. Granting Defendant's motion to dismiss would be tantamount to giving all financial institutions complete discretion in terms of how it uses information it receives from another financial institution.

---

[1] Under the best evidence rule, Defendant would need to at least produce a copy of the original contractual agreement and an explanation of why an original copy is unavailable.

II.   <u>In Order to Prove That the Contractual Expectations Were Reasonable Under the Circumstances Discovery is Necessary, Including the Production of the Original Contract.</u>

Defendant makes a lot of allegations based on the latest version of the contract attached to their motion, but this is not the original contract Plaintiff signed and agreed to 34 years ago. He was given assurances of good faith and fair dealing by BofA staff when the account was originally opened. Complaint ¶ 34. There is no proof or evidence that Plaintiff ever received updated contracts or gave valid consent for any changes made in the new version of the contract.

Under Florida law, a new contract between the parties cannot be legally substituted for the old contract unless there had been a novation. <u>Thompson v. Jared Kane Co.</u>, 872 So. 2d 356, 361(Fla. Dist. Ct. App. 2d Dist., April 23, 2004). "A novation is a mutual agreement between the parties for the discharge of a valid existing obligation by the substitution of a new valid obligation." <u>Id</u>. (internal citations omitted). Accordingly Florida law requires that four elements must be shown to prove a novation: 1) the existence of a previously valid contract; 2) the agreement of the parties to cancel the first contract; 3) the agreement of the parties that the second contract replace the first; and 4) the validity of the second contract. <u>Id</u>. (internal citations omitted). The elements for novation are essentially the same under Georgia law as well. See <u>Ga. Income Property Corp. v. Murphy</u>, 354 S.E.2d 859 (Ga. Ct. App. 1987). Here, Defendant does not claim

that a novation occurred some time after the original contract was executed when the account was opened 34 years ago. And there is no reference to a novation in the 2015 agreement attached to the motion. If the original contract contains more favorable provisions concerning good faith and fair dealing, what was the consideration for changing the contract to remove them? What was the consideration for modifying the language in the original contract? Such questions can only be answered by means of proper discovery including production of the original contract, making granting Defendant's Motion improper at this early stage as an open question remains as to which contract and what terms therein specifically apply.

It is Plaintiffs' contention that the original contract probably has a higher duty of care standard to be applicable for Plaintiffs' negligence claims here. Although not conceding its validity, at a minimum Defendant's attached 2015 contract notes that Bank of American has an ordinary duty of care in the handling of the Plaintiffs' account. (Defendant's Ex. 5 at 2). What is not addressed in Defendant's brief is whether this duty of care is breached when a bank takes advantage of laws aimed at curbing money laundering and terrorist financing to shut down an account for wholly unrelated and inappropriate reasons, i.e. a PEP account is expensive to maintain.

Plaintiffs assert that the duty of care owed to them by Bank of American in handling the accounts has been breached by the account closure and the manner in which it was conducted with resulting damages. ¶ 15-21. Defendant's argument that the implied covenant of good faith and fair dealing does not apply as no underlying valid breach of contract claim has been asserted falls short here, as Plaintiffs assert a direct breach of the duty of care owed to them in the agreement for the negligence claim. Accordingly,

Defendant's breach of the express (when the contract was entered into) and implied covenant of good faith and fair dealing is tied to an underlying breach of contract claim.

Furthermore, contrary to Defendant's allegations, Plaintiff's damages are far from a "threadbare recital," noting "significant personal and financial injury as a direct result of BofA's negligence." Complaint ¶ 20. Plaintiff has thus pled all the elements of a valid negligence claim against Bank of America, making granting Defendant's motion improper at this time before discovery has been provided for a review of the original agreement an a resolution of these factual disputes. Query: Can this court reasonably infer that the Defendant no longer has the original contract in its files? That would pose a significant problem for the Defendant, because that is the foundation document which subsequently offered revised versions rely on, and look back to.

As noted by Defendant, both Florida and Georgia law recognize the implied covenant of good faith and fair dealing in a contract, citing in Florida law that it "is intended to protect the reasonable expectations of the contracting parties in light of their express agreement." Ins. Concepts & Design, Inc. v. Healthplan Serv., Inc., 785 So. 2d 1232, 1234 (Fla. Dist. Ct. App. 2001). In the present action, Defendant has not produced the original contract Plaintiff entered into when the account was first opened, nor has Defendant provided any proof or evidence that Plaintiff ever agreed to the terms of the 2015 contract attached to the Motion. Even if this 2015 contract were found valid, Defendant has a duty of care towards Plaintiff in handling the account per the agreement, upon which the negligence claim rests. Accordingly Plaintiff has a direct contractual violation claim against Defendant, allowing for claims of a breach of the covenant of good faith and fair dealing to proceed under Florida law. Id.

Similarly, the cause of action for the breach of the covenant of good faith and fair dealing would proceed under Georgia law as well. Higginbottom v Thiele Kaolin Co., 304 S.E.2d 365, 366 (Ga. 1983). Although "courts are generally reluctant to make contracts for the parties, they will imply promises or duties when justice, good faith, or fairness so demand." Id. (citing Williston on Contracts, supra; 3 Corbin on Contracts, §§ 541, 561). Plaintiff has noted in the complaint "a 34-year relationship with the bank," stating that "[w]hen Plaintiff opened up his account at BofA 34 years ago, he had discussions with bank officials, who assured him that he would be treated with the utmost good faith in all of his transactions at the bank." Complaint ¶ 13, 23. Plaintiff "opened the account on the basis of those representations." Complaint ¶ 23. When looking at the circumstances surrounding the creation of the contract, Plaintiff has sufficiently pled facts describing a bargain that the parties reached including a covenant of good faith and fair dealing provision that was the basis for forming the contract in the first place. Id. That covenant is what Plaintiff claims has been breached by BofA. Defendant has both failed to address this issue and produce the original agreement for the account. Nor has Defendant offered any proof or evidence to assert that the 2015 contract was ever given to or validly agreed to by the Plaintiff. (Defendant's Ex. 5).

So the Court is left with an obvious question, what contract is it supposed to interpret? The original contract, or the 2015 contract? Thus, any claim Defendant makes that this 2015 contract would limit damages or liability is improper without discovery or proof that it is a valid contract in place of the original agreement entered into between Plaintiffs and Defendant. Accordingly, granting the motion to dismiss on the basis of this exhibit or any clauses therein without allowing for proper discovery to ascertain its

validity and application would be improper at this time.

Although not conceding the agreement provided by Defendant is the one that ultimately applies—since Defendant has not attached the original contract regarding the account or an affidavit explaining its absence—in the 2015 agreement Defendant attached to their motion there is no statement or clause that BofA does not have to provide Plaintiff an explanation for the closure of the account, nor is there a clause stating the account may be closed for any reason or no reason. (Defendant's Ex. 5 at 2). The original contract on the account may show a higher duty beyond one of ordinary care and good faith dealing, yet Defendant provided no affidavit or other evidence to assert that they did not possess or could not find the original contract after search efforts were concluded. They don't even tell the Court if they indeed engaged in search efforts. By not supplying the original contract, Defendant has created a valid inference that the terms of the agreement Plaintiff and BofA actually entered into has terms that were breached here. Only comprehensive discovery and factual litigation of this issue will be able to resolve this issue.

Even if the 2015 agreement were to apply, this agreement referenced by Defendant does not specifically address the situation that is the subject of this complaint. (Defendant's Ex. 5). This contract does not afford the court a basis for granting the motion to dismiss, as the sole argument that Defendant makes on it is that based on a clear reading of the language they can shut down a customer's account without giving prior notice. Id. at 2. That section does not say, however, that they have no obligation to explain to the customer why they are shutting down the account, or provide any evidence that this provision was validly agreed to and entered into by Plaintiffs when the original

contract was made. The letter attached hereto as Defendant's Exhibit 6 informing the Plaintiff as to the closure of his account is relevant evidence when it comes to Plaintiff's argument as to how important the original contract is. (Defendant's Ex. 6). In the letter, the bank cites that they are relying upon the original agreement entered into. This begs the question that was already raised herein, i.e. which contract does the Court interpret?

In ¶ 23 of the Complaint, Plaintiffs note that when the account with BANA was originally opened Plaintiffs were given assurances that they "would be treated with the utmost good faith in all of his transactions at the bank." Accordingly, Plaintiffs had received reasonable assurances at the time the original contract with Defendant was entered into that any negative developments arising out of account activity would be fully and fairly investigated, with explanations being given to the Plaintiffs. Here this did not occur, nor has Defendant properly addressed this issue, instead choosing to argue that there can be no implied covenant of good faith and fair dealing without pleading a breach of contract—a hurdle Plaintiff has already met as explained above. Thus a factual question still remains, and is another reason why dismissal at this time improper.

## CONCLUSION

Plaintiff has sufficiently pled facts for causes of action based on both breach of contract and negligence, with factual disputes remaining to be litigated as to what the valid terms of the agreement were when the account was originally opened 34 years ago. Accordingly, granting Defendant's motion to dismiss at this time would be improper without affording the Plaintiff initial discovery to help resolve these factual questions. Thus, Defendant's Motion should be denied, especially since: a) resolution of a novel

issue of law is normally based on completely developed factual records; and b) once discovery is completed, the Defendant has the option of filing a motion for summary judgment. At that time, however, the Court shall have a fully developed record and be able to decide whether it is appropriate to grant such a motion.

Dated: October 21, 2016

                            Respectfully Submitted,

By:   */s/ Martin F. McMahon*
       Martin F. McMahon, Esq.
       D.C. Bar Number: 196642
       Martin F. McMahon & Associates
       1150 Connecticut Avenue, N.W., Suite 900
       Washington, D.C. 20036
       (202) 862 - 4343
       mm@martinmcmahonlaw.com
       *Counsel for Plaintiff*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing Plaintiff's Opposition To Bank of America's Motion to Dismiss and proposed order has been made through the Court's electronic transmission facilities on the 21st day of October, 2016.

                Respectfully Submitted,

                _____/s/
                Martin F. McMahon, Esq.
                D.C. Bar Number: 196642
                Martin F. McMahon & Associates
                1150 Connecticut Avenue, N.W., Suite 900
                Washington, D.C. 20036
                (202) 862 - 4343