**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOHN DOE and JANE DOE,<br><br>                              Plaintiffs,<br><br>             v.<br><br>MERRILL LYNCH and<br>BANK OF AMERICA CORP.<br><br>                              Defendants. | Case No. 1:16-cv-00253-RMC<br><br>**[ORAL ARGUMENT REQUESTED]** |

**DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES
IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT**

**TABLE OF CONTENTS**

I.      THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE……………...……2

II.     JANE DOE'S CLAIMS SHOULD BE DISMISSED WITH PREJUDICE………………2

III.    AMENDING THE COMPLAINT WOULD BE FUTILE………………………….…...3

   A.  Any Amended Complaint Cannot State Claims for Breach of
Contract or Breach of the Implied Covenant Against BANA…………………….………4

      1.  Plaintiffs Consented to the 2015 BANA Agreement,
Which Expressly Authorized the Account Terminations……………...……..4

      2.  The Complaint Fails to Allege a Contractual Provision
that BANA Purportedly Breached…………………………………………..…….8

      3.  The 2015 BANA Agreement's Duty of Care Provision
Does Not Apply to the At-Will Termination Provision……………….…….9

      4.  The Opposition Effectively Concedes that Plaintiffs
Cannot Recover the Damages Alleged in the Complaint………….……….12

      5.  Plaintiffs Negate the Two Independent Conditions
Necessary to State a Claim for Breach of the Implied Covenant………..….14

   B.  Any Amended Complaint Cannot State a Claim for Negligence
Against BANA……………………………………………………………………...……14

      1.  No Common Law Duty of Care Exists as Alleged…………………...……14

IV.    CONCLUSION……………………………………………………………….…..…….15

## TABLE OF AUTHORITIES

**Federal Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)……………………………………………………………7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)……………………….………...………..7

*DeBlasio v. Merill Lynch & Co.,* No. 07-Civ-318(RJS),
2009 WL 2242605 (S.D.N.Y. Jul. 27, 2009)…………………………………………...………6

*Greggs v. Autism Speaks, Inc.*, 987 F. Supp. 2d 51 (D.D.C. 2014)…………...……………..3

*Kriegel v. Bank of Am., N.A.*, Nos. 07CV12246-NG, 08-11598,
2010 WL 3169579 (D. Mass. Aug. 10, 2010)…………………………………………………..2

**State Cases**

*Atlanta Dev., Inc. v. Emerald Capital Inv., LLC*,
574 S.E.2d 585 (Ga. Ct. App. 2002)……………………………………………………………8

*Burlington & Rockenbach, P.A. v. Law Offices of E. Clay Parker*,
160 So. 3d 955 (Fla. Dist. Ct. App. 2105)………………………….…………………..8

*In re Standard Jury Instructions—Contract & Bus. Cases*,
116 So. 3d 284 (Fla. 2013)………………………………………………...…………7, 10, 11

*Jacobs v. Citibank, N.A.*, 462 N.E.2d 1182 (N.Y. 1984)………………………………………..6

*Okeechobee Resorts, L.L.C. v. E Z Cash Pawn, Inc.*,
145 So. 3d 989 (Fla. Dist. Ct. App. 2015)…………………………………...……………7

*Vaughn, Coltrane & Assoc. v. Van Horn Constr., Inc.*, 563 S.E.2d 548
(Ga. Ct. App. 2002)………………………………………………………………….……7, 10, 11

*Wolf Creek Landfill, LLC v. Twiggs County*, 786 S.E.2d 862 (Ga. Ct. App. 2016)…....………7, 10

*Wornow v. Register.Com, Inc.*, 778 N.Y.S.2d 25 (App. Div. 2004)…………...…………..……6

**Statutes and Regulations**

31 C.F.R. § 1010.540……………..…………………………………………………....……...12, 13

In their Opposition to Defendants' Motion to Dismiss the Complaint ("Opposition" or "Opp."), Plaintiffs concede that all four counts in the Complaint are defective. Plaintiffs voluntarily "agree to drop Counts III and IV against Defendant Merrill Lynch with prejudice." Opp. (Dkt. 16), at 2-3. As these are the only claims asserted against Merrill Lynch, the Court should enter an order dismissing the Complaint as to Merrill Lynch.[1] Plaintiffs also request leave to amend the Complaint by dropping their claims against the only other defendant—Bank of America Corporation ("BAC")—and adding Bank of America, N.A. ("BANA") in place of BAC. *See id.* at 3. In so doing, Plaintiffs concede that there is no legal basis for their claims against BAC—a bank holding company with no operations—based on BANA's termination of their bank accounts and the Complaint should therefore be dismissed as against BAC as well. Finally, Plaintiffs also concede that *Jane* Doe lacks standing to assert the claims in Counts I and II against any entity. The Opposition refers to these counts as belonging to a Plaintiff exclusively described in the singular and masculine, *i.e.*, *John* Doe. *See id.* at 3, 11-13. Jane Doe's claims should be dismissed without further analysis.

In light of Plaintiffs' concessions, the Complaint should be dismissed in its entirety. And that dismissal should be with prejudice, since amending the Complaint, as Plaintiffs propose, to "more fully detail" Counts I and II or to name BANA as a defendant in place of BAC, would be futile. *See id.* at 3. As a matter of law, Count I cannot plausibly allege a claim against BANA for negligence relating to the account closures at issue. Nor can Count II plausibly allege any breach of contract or breach of the implied covenant of good faith and fair dealing by BANA based on the exercise of its unfettered contractual right to close Plaintiffs' accounts.

---

[1] This memorandum refers to Defendants' Motion to Dismiss (Dkt. 14) as the "Motion to Dismiss" or "Mot." Unless otherwise defined, all capitalized terms have the same meaning as in the Motion to Dismiss.

At bottom, under Plaintiffs' BANA account agreements—which, contrary to the Opposition's assertions, Plaintiffs expressly agreed to in writing—and the applicable law, neither BAC nor BANA can possibly have any liability for doing something the account agreements expressly permitted.

I.      THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

In addition to inviting with-prejudice dismissal of the two claims against Merrill Lynch, the Opposition effectively concedes that Counts I and II fail to state any viable claims against the only remaining Defendant—BAC.  *See* Opp. at 3 ("In the event that the Court is inclined to grant the motion to dismiss, Plaintiff requests leave to amend to more fully detail his claims against [BAC] or against Bank of America, North America (BANA) if that is deemed necessary by the Court as the proper named party against whom these claims should be asserted."). Nowhere does the Opposition even attempt to explain how BAC, BANA's indirect parent, can possibly have any liability here.  Plaintiffs' accounts were at BANA and it was BANA that closed those accounts.  Plaintiffs "ha[ve] not alleged facts that show BAC played a direct role in any of BANA's banking activities" at issue, *i.e.*, BANA's termination of Plaintiffs' accounts. *Kriegel v. Bank of Am., N.A.*, Nos. 07 CV 12246-NG, 08-11598, 2010 WL 3169579, at *7 (D. Mass. Aug. 10, 2010) (dismissing complaint against BAC based on BANA's alleged conduct).

Further, as discussed below, Counts I and II against BAC should be dismissed with prejudice because amending the Complaint, as Plaintiffs propose, to "more fully detail" Counts I and II or name BANA a defendant would be futile as a matter of law.  *See* Opp. at 3.

II.     JANE DOE'S CLAIMS SHOULD BE DISMISSED WITH PREJUDICE

In addition to conceding that neither Plaintiff has any viable claims against Merrill Lynch or BAC, the Opposition also effectively admits that Jane Doe has no valid claims under Counts I and II.

2

The Opposition repeatedly describes Counts I and II as pertaining exclusively to a single, male Plaintiff (*i.e.*, John Doe) regarding a single account. The Opposition states:

- "**Plaintiff** requests leave to amend . . . **his claims** against Bank of America (BofA)."

- "**Plaintiff's** damages are far from a 'threadbare recital' . . . . **Plaintiff has** thus pled all the elements of a valid negligence claim . . . ."

- "Defendant has not produced the original contract **Plaintiff** entered into when **the account was** first opened, nor has Defendant provided any proof or evidence that **Plaintiff** ever agreed to the terms of the 2015 contract attached to the Motion . . . ."

- "Accordingly **Plaintiff has** a direct contractual violation claim against Defendant."

- "That covenant is what **Plaintiff claims** has been breached by BofA."

- "[I]n the 2015 agreement Defendant [sic] attached to their motion there is no statement or clause that BofA does not have to provide **Plaintiff** an explanation for the closure of **the account**."

Opp. at 3, 11-13 (emphasis added). The Opposition does not attempt to argue that Plaintiff *Jane* Doe has any viable claims. Counts I and II should be therefore be dismissed with prejudice as to Jane Doe.

### III.   AMENDING THE COMPLAINT WOULD BE FUTILE

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, after 21 days have elapsed, a "party may amend its pleading *only* with the opposing party's written consent or the court's leave." *Greggs v. Autism Speaks, Inc.*, 987 F. Supp. 2d 51, 53 (D.D.C. 2014) (emphasis in original). But courts deny any amendment to a pleading that would be futile—*e.g.*, where a complaint would continue to fail to state a viable claim. *See*, *e.g.*, *id.* at 54-55 (striking complaint seeking to add promissory estoppel claim as futile because, as a matter of law, such a claim failed).

Here, amending the Complaint, as Plaintiffs informally propose, to "more fully detail" Counts I and II or name BANA as a defendant in place of BAC, would be futile. Opp. at 3. As a matter of law, an amended complaint cannot plausibly allege a claim for breach of contract, breach of the implied covenant, or negligence against BANA.

### A.   ANY AMENDED COMPLAINT CANNOT STATE CLAIMS FOR BREACH OF CONTRACT OR BREACH OF THE IMPLIED COVENANT AGAINST BANA

#### 1.   Plaintiffs Consented to the 2015 BANA Agreement, Which Expressly Authorized the Account Terminations.

BANA appropriately terminated Plaintiffs' accounts pursuant to the express terms of the then-current 2015 version of BANA's Deposit and Agreement and Disclosures (the "BANA Agreement"). The Opposition argues that Plaintiff John Doe did not consent to be bound by the 2015 version of the BANA Agreement and was instead bound only to an "original" agreement allegedly dating from the early 1980s. *See*, *e.g.*, Opp. at 8-11. The Opposition further argues that the BANA Agreement is vague. *Id.* at 13. These arguments are meritless.

*First*, both Plaintiffs affirmatively confirmed their consent in writing to the 2015 BANA Agreement. On October 13, 2010 and July 26, 2011, respectively, John Doe and Jane Doe signed Personal Signature Card forms regarding their BANA accounts. Exs. 4-5. Each signed form states:

> "By signing below, I/we acknowledge and agree that this account is and shall be governed by the terms and conditions set forth in the following documents, *as amended from time to time*: . . . the Deposit Agreement and Disclosures . . . ."

*Id.* (emphasis added). When Plaintiffs signed these forms, the 2010 version of the BANA

4

Agreement was the then-current version that governed Plaintiffs' accounts.[2] The 2010 version was later "amended from time and time"—a process that Plaintiffs agreed to by continuing to use their accounts following the amendment, as the 2010 agreement explicitly provided. Ex. 1, at 2. As a result, it is the 2015 version of those agreements—the version in effect when the accounts were closed in March 2015— that governed Plaintiffs' accounts. Ex. 3.

The terms of the 2015 BANA Agreement are, in relevant part, no different than the terms of the 2010 BANA Agreement Plaintiffs signed. Both versions contained the following unambiguous terms:

- **Unilateral amend-at-will clauses**, affirming BANA's right to "change this Agreement *at any time*" to "add new terms [or] delete or amend existing terms" and do so *"without prior notice"*—consistent with the "as amended from time to time" language in the Signature Cards Plaintiffs signed, which is quoted above;

- **"Supersedes" clauses**, affirming that "the then-current version of this Agreement *supersedes all prior versions* and governs your account";

- **Negative consent clauses**, affirming that "if you continue to *use* your account or *keep it open*, you are *deemed to accept and agree* to [any] change and *are bound by* the change." Indeed, "[i]f you do not agree with a change, you may close your account";

- **Mutual at-will termination clauses**, affirming that Plaintiffs or BANA could "close . . . [the] account[s] *at any time without advance notice*."

Ex. 1, at 2; Ex. 3, at 2 (emphasis added).

Thus, under the terms of the agreements they signed in 2010, Plaintiffs affirmatively agreed that the then-current version of the BANA Agreement—here, the 2015 version— governed Plaintiffs' accounts at termination, expressly superseding all prior account agreements and granting both parties the unconditional right to terminate Plaintiffs' accounts at will.

---

[2] *Compare* 2010 BANA Agreement (Ex. 1), *with* 2011 BANA Agreement (Ex. 2). The cover pages of these two versions of the BANA Agreement show that the 2010 version was in effect from June 19, 2010 to July 31, 2011, and thus governed all of Plaintiffs' relevant accounts from that time forward, until amended. Declaration of Sean Rash ("Rash Decl.").

*Second*, Plaintiffs also consented to the 2015 BANA Agreement through its standard "negative consent" provision, quoted above. Under this provision, by continuing to use his or her account, the account holder is deemed to have accepted the revised version of the deposit agreement. *See*, *e.g.*, *Wornow v. Register.Com, Inc.*, 778 N.Y.S.2d 25, 26 (App. Div. 2004) (finding "nothing deceptive in defendant's use of e-mail to give notice of modification of an agreement" where agreement provided that it could be unilaterally modified by defendant and that notice of any modification could be given by e-mail); *Jacobs v. Citibank, N.A.*, 462 N.E.2d 1182, 1183 (N.Y. 1984) (contract providing for unilateral contract modification enforceable); *DeBlasio v. Merrill Lynch & Co.*, No. 07 CV 318 (RJS), 2009 WL 2242605, at *39 (S.D.N.Y. Jul. 27, 2009) (contract providing for unilateral contract modifications with negative consent enforceable). Use of such negative consent is commonplace and, as a practical matter, the only way that financial institutions with millions of customers can update their account agreements from time to time.

*Third*, the Opposition's attempt to shift focus to some "original" BANA deposit agreement allegedly signed by John Doe in the early 1980s is thus irrelevant. *See*, *e.g.*, Opp. at 8-11. Plaintiffs' argument that the "original" version "is the foundation document which subsequently offered revised versions rely on, and look back to" (*id.* at 11) ignores that both Plaintiffs signed new deposit agreements in 2010, which contained the unequivocal language quoted above providing that newer versions of the agreement supersede older versions, including whatever agreements John Doe or Jane Doe signed many years ago.

*Fourth*, the Opposition's strained argument that the above mutual at-will termination clause is vague (*id.* at 13) also is meritless. According to Plaintiffs, this provision does not create at-will account closure rights because it contains "no statement or clause that [BAC or BANA]

6

does not have to provide Plaintiff [sic] an explanation for the closure of the account, nor is there a clause stating the account may be closed for any reason or no reason." *Id.* Essentially, Plaintiffs argue that this simple and straightforward provision—which, again, allows either party to close an account, without restriction, "at any time without advance notice"—somehow requires BANA to establish some unspecified good reason to close an account because the provision does *not* state that BANA does *not* have to do so. This Orwellian interpretation is implausible on its face, lacks "common sense," and should not be taken as true even if alleged in an amended version of the Complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Plaintiffs' argument also violates at least three well-established contract interpretation rules. To begin, an interpretation that would prohibit BANA from closing the accounts until it has established some good reason to do so impermissibly vitiates its express contractual right to close the accounts "at any time." *In re Standard Jury Instructions—Contract & Bus. Cases*, 116 So. 3d 284, 316-17 (Fla. 2013) (courts must construe contract terms in accordance with their plain meaning and cannot render any express term meaningless); *Wolf Creek Landfill, LLC v. Twiggs County*, 786 S.E.2d 862, 865 (Ga. Ct. App. 2016) (same); *Vaughn, Coltrane & Assocs. v. Van Horn Constr., Inc.*, 563 S.E.2d 548, 550 (Ga. Ct. App. 2002) (same).

Plaintiffs' theory also impermissibly requires the Court to read new, unstated terms into the Agreement. *Okeechobee Resorts, L.L.C. v. E Z Cash Pawn, Inc.*, 145 So. 3d 989, 993 (Fla. Dist. Ct. App. 2014) (courts cannot rewrite contracts by implying terms); *Wolf Creek*, 786 S.E.2d at 865-66 (same).

Finally, reversing the parties' roles reveals the absurdity of Plaintiffs' theory that the parties' mutual account closure rights were circumscribed by an implied obligation to defer any

closure until the conclusion of some undefined investigation and reporting procedure. *Burlington & Rockenbach, P.A. v. Law Offices of E. Clay Parker*, 160 So. 3d 955, 958 (Fla. Dist. Ct. App. 2015) (courts cannot construe contract so as to lead to absurd results); *Atlanta Dev., Inc. v. Emerald Capital Invs., LLC*, 574 S.E.2d 585, 590 (Ga. Ct. App. 2002) (same). Under Plaintiffs' theory, if information came to Plaintiffs' attention suggesting BANA had been implicated in some improper activity (as the Complaint alleges occurred with John Doe), Plaintiffs would not have been entitled to simply close their accounts. If Plaintiffs' construction of the provision were correct, they would first be required to investigate the allegations concerning BANA, demonstrate their merit, and then justify their conclusions to BANA. The absurdity of Plaintiffs' construction of the mutual at-will termination provision is obvious.

The termination provision protects **both** parties by establishing the entirely reasonable proposition that Plaintiffs were not entitled to maintain accounts at BANA any more than BANA was entitled to keep their accounts. Plaintiffs' attempts to ignore the clear terms of the termination provision should be rejected.

### 2. The Complaint Fails to Allege a Contractual Provision that BANA Purportedly Breached.

Even aside from the fact that the Agreement expressly permitted the account closures, the Opposition does not rebut Defendants' argument that the Complaint fails to allege the requisite breach element of a breach of contract claim. *See* Mot. at 18.

The Motion to Dismiss established that Count II does not identify a single provision of the BANA Agreements that Plaintiffs claim were breached, but instead attempts to state a claim for breach of the implied covenant entirely divorced from the express terms of the parties' agreement. *See id.* at 18-19; Compl. ¶ 26 ("BofA breached the covenant of good faith and fair dealing implied in its dealings and in its contracts with both Plaintiffs."). In response, Plaintiffs

8

attempt to shoehorn this missing allegation into the Complaint. The Opposition theorizes that a prior account agreement signed over three decades ago—superseded several times over and not before the Court[3]—may have contained an express "duty of care" provision and that BAC breached it:

> Plaintiff's . . . breach of contract claims, including breach of the implied covenant . . . , are based on the original agreement which the Plaintiff signed with Bank of America 34 years ago, noting that there is a duty of care applied to the account holder, thus resulting in validly pled causes of action for both the breach of contract claims . . . . These claims are also based on the 2015 revised agreement . . . . Each contract contains a provision that a duty of care is owed to the account holder.

Opp. at 2 (emphasis added). Plaintiffs speculate that "the original contract probably has a higher duty of care standard" (*id*. at 10), but offer no basis for this self-serving conjecture, which the Court should simply disregard.

The Complaint's only duty of care-related allegations are contained in Count I, the negligence claim, and refer to the common law duty of care. Compl. ¶¶ 15, 20 (Count I alleges that "[BAC] owed the Plaintiff[s] . . . a duty to act with reasonable care at all times" and "[BAC] owed a duty to Plaintiff to investigate such spurious charges and determine whether they were bona fide."). Nowhere does the Complaint allege that BAC (or BANA) breached any contractual duty of care provision.

### 3. The 2015 BANA Agreement's Duty of Care Provision Does Not Apply to the At-Will Termination Provision.

Even if Plaintiffs amended the Complaint to allege that BANA breached the 2015 BANA Agreement's "duty of ordinary care" provision (Ex. 3, at 2), Count II would still fail to state a

---

[3] It is unclear how Plaintiffs can, in good faith, assert that this long-forgotten account agreement—but not the many others that have superseded it—featured a provision that just happens to coincide with Plaintiffs' new theory of liability. If the agreement is missing, on what basis have Plaintiffs alleged it contains this unusual and implausible provision?

9

claim. That provision states: "This Agreement and the deposit relationship do not create a fiduciary, quasi-fiduciary or special relationship between us. We owe you only a duty of ordinary care." *Id*. The purpose of this provision is obvious: it was intended to make clear that, in performing banking services, BANA was not acting as a fiduciary, with a heightened standard of care, and was instead bound only to an ordinary care standard. Contrary to Plaintiffs' contention, the duty of care provision does not apply to both parties' right to close the accounts at will for three reasons.

*First*, Plaintiffs' reading of the Agreement, under which a "care" limitation on account closures (Opp. at 2) would be implied, is irreconcilable with the plain meaning of the at-will account closure provision. The closure provision is silent as to any such duty of care, or any other restriction, and broadly affords both parties the right to close relevant accounts "at any time without advance notice." Ex. 3, at 2. Thus, Plaintiffs' attempt to impose a "care" qualifier to this provision fails for the same reason its attempt to impose a "good reason" term fails. Implying a duty of care relating to account closure would impermissibly vitiate BANA's express right—and Plaintiffs' parallel right—to close the accounts "at any time." *See In re Standard Jury Instructions*, 116 So. 3d at 316-17; *Wolf Creek*, 786 S.E.2d at 865; *Vaughn*, 563 S.E.2d at 550.

*Second*, the duty of care provision plainly applies only to a distinct set of banking services (*i.e.*, check processing, processing and recording of deposits and withdrawals, etc.) and not to account closure:

> In receiving checks or other items for deposit or collection, we . . . assume no responsibility beyond the *exercise of ordinary care*.
>         \*      \*      \*
> You agree that we will have *exercised ordinary care* if we examine only [checks] that we have identified according to the criteria that we may establish in our discretion for inspection.

> \* \* \*
> You agree that the *exercise of ordinary care* will not require us to detect forgeries or alterations [to checks] that could not be detected by a person observing reasonable commercial standards.
> \* \* \*
> [I]f you fail to notify us in writing of suspected problems or unauthorized transactions within 60 days after we make your statement or items available to you, you agree that: you may not make a claim against us relating to the unreported problems or unauthorized transactions, *regardless of the care or lack of care we may have exercised* in handling your account.

*See* Ex. 3, at 17, 22, 23, 29, 34 (emphasis added). Established rules of contract interpretation prohibit Plaintiffs' strained reading, requiring instead a construction that gives effect to **both** the unrestricted account closure right and the provision that BANA owes only an ordinary duty of care in carrying out banking services. *See In re Standard Jury Instructions*, 116 So. 3d at 317 (courts cannot construe one contract provision to render another superfluous); *Vaughn*, 563 S.E.2d at 550 (same).

*Third*, the Opposition fails to cite a single case (and we have found none) establishing that, before closing an account, BANA's "duty of ordinary care" requires it to follow the elaborate procedures Plaintiffs have conjured up, *i.e.*, investigate and prove all charges of improper activity leveled against customers, justify to the customers any account closures, and only then exercise the right to close an account. Compl. ¶¶ 15, 20. The conspicuous absence of any legal authority supporting Plaintiffs' allegations further underscores their implausibility and that they need not be taken as true under *Twombly* and *Iqbal*.

In sum, the at-will account closure provision was not subject to any duty of care limitation. Thus, even if the Complaint were amended to allege that BANA breached the contract's duty of care provision, such an allegation does not state a claim as a matter of law.

### 4. The Opposition Effectively Concedes that Plaintiffs Cannot Recover the Damages Alleged in the Complaint.

The Motion to Dismiss demonstrated that Count II fails to allege cognizable damages. The Opposition fails to rebut this argument.

*First*, the Opposition ignores the BANA Agreement's limited liability provision. This provision expressly immunized BANA for liability regarding damages resulting from "any action authorized or permitted by this Agreement." Mot. at 15; *see* Ex. 3, at 34. As discussed above, the at-will account closures were expressly permitted by the Agreement and thus cannot form the basis for damages claims.

*Second*, the Opposition does not rebut Defendants' argument that Plaintiffs suffered no loss at all and that the Complaint asserts only that John Doe "fears . . . future" loss. Mot. at 15. Indeed, Plaintiffs' answer to BANA's argument that the Complaint alleges only a threadbare recital of damages is to ***highlight*** just how threadbare the Complaint's recital of damages is: "Plaintiff's damages are far from a 'threadbare recital,' noting 'significant personal and financial injury as a direct result of BofA's negligence.'" Opp. at 11. This is precisely the type of conclusory allegations that *Twombly* and *Iqbal* reject.

*Third*, even if the Complaint was amended to allege plausible damages that overcome the limited liability contract provision (which is insurmountable here), BANA still could not be held liable for the account closures under federal law. As noted in the Motion to Dismiss, where a financial institution receives information implicating a customer in money-laundering, the institution is expressly shielded from liability flowing from closure of the customer's account:

> "Information received by a financial institution [regarding individuals possibly involved with money laundering] . . . shall not be used for any purpose other than: . . . ***Determining whether to*** establish or ***maintain an account***.
> \*     \*     \*

12

> A financial institution . . . that shares information pursuant to [the above] *shall be protected from liability* for such sharing, or for any failure to provide notice of such sharing, to an individual."

31 C.F.R. §§ 1010.540(b)(4)(i)(B), (b)(5)(i) (emphasis added).[4]

The Opposition attempts to argue the inapplicability of this safe harbor by simply denying that the Complaint alleges that BANA received information, true or not, implicating John Doe in money-laundering. Opp. at 1-2. But that is exactly what the Complaint alleges. Compl. ¶¶ 12, 16, 33 ("BofA received information . . . from the U.S. Department of the Treasury's Financial Crimes Enforcement Network (FinCEN) or . . . Merrill Lynch . . . that . . . appeared to implicate [John Doe] in *potential illicit activity*. . . . BofA decided not to investigate the[se] spurious charges because: [John Doe] maintained a home outside of America *where money-laundering guidelines were not as stringent* . . . . Because of Plaintiff's status as . . . a significant person of interest in the world of international politics, the closure of his account and the accompanying rumors of *illicit activity, i.e., money laundering,* have been injurious to his business reputation . . . ." (emphasis added).

Thus, taking as true the Complaint's own allegations that BANA terminated Plaintiffs' accounts as a result of receiving information that linked John Doe with money-laundering, federal law expressly precludes BANA's liability for such terminations.[5]

\* \* \*

---

[4] This safe harbor applies to BANA, which allegedly received the information from Merrill Lynch or a third party (Compl. ¶¶ 12, 16, 33), because the regulation expressly defines the term "shares" to include "transmit[ting] *[or] receiv[ing]*" information. 31 C.F.R. § 1010.540(b)(1) (emphasis added).

[5] Plaintiffs' damages claims fail for two additional reasons. *First*, the Opposition does not even respond to Defendants' argument that, under applicable law, the Complaint's claim for reputational damages under a negligence theory fails. *See* Mot. at 16. *Second*, the Opposition also ignores Defendants' argument that, under Georgia law, the economic loss rule bars the negligence claim asserted by Jane Doe (a Georgia resident). *See id.* at 16-17. These additional, unrebutted points warrant dismissal of the negligence claim.

In sum, BANA had an express right under the 2015 BANA Agreement to terminate Plaintiffs' accounts at-will, without condition or liability, and BANA exercised that right. Plaintiffs can allege neither the breach of any agreement with BANA, nor any cognizable damages. Thus, Count II cannot state a breach of contract claim and should be dismissed with prejudice.

### 5. Plaintiffs Negate the Two Independent Conditions Necessary to State a Claim for Breach of the Implied Covenant.

The Opposition cannot overcome Defendants' showing that Plaintiffs' breach of the implied covenant claim is legally meritless. As discussed in the Motion to Dismiss, under applicable law, a breach of the implied covenant claim fails where a plaintiff: (1) fails to plead an underlying breach of contract claim; and (2) seeks to imply a term that is at odds with an express contractual term. Mot. at 17-18. As demonstrated above, Count II—as pled against BAC, and under any possible amendment to assert a claim against BANA—fails to plead a breach of contract claim. And the BANA Agreement expressly authorized BANA's conduct—closing Plaintiffs' accounts—and so a contrary term cannot be implied to override that right.

### B. ANY AMENDED COMPLAINT CANNOT STATE A CLAIM FOR NEGLIGENCE AGAINST BANA

#### 1. No Common Law Duty of Care Exists as Alleged.

BANA did not breach a common law duty by closing Plaintiffs' accounts for two reasons. *First*, for the reasons discussed above in Part III.A.1, Plaintiffs agreed that the 2015 BANA Agreement governed their accounts. Thus, in closing their accounts pursuant to the Agreement's express terms, by definition, BANA could not have breached a duty to Plaintiffs. *Second*, the Opposition ignores Defendants' showing that the law Plaintiffs posited in the Complaint does not exist. As the Motion to Dismiss stated, the Complaint "asserts that 'North Carolina, New York, and Florida [] [c]ourts . . . have issued favorable rulings regarding the

14

rights of a bank customer when his [bank terminates his account] for unknown reasons . . . [and] [t]he length and nature of the relationship are important considerations in this regard.' . . . Yet the Complaint cites no such precedent, and we are aware of none." Mot. at 12; Compl. at 2.

The Opposition's response to this argument is silence. It cites no case law from North Carolina, New York, Florida, or anywhere else supporting the Complaint's allegations concerning the law. Plaintiffs thereby concede that the Complaint's allegations of "favorable rulings" relating to bank account terminations are entirely unfounded. The absence of legal support for the Complaint's alleged common law duty of care underscores these allegations' fatal infirmities.

## IV. CONCLUSION

The Complaint fails to plead any legally cognizable claims. Amending it would be futile. The Complaint should therefore be dismissed with prejudice.

Dated: November 21, 2016

Respectfully submitted,

By: /s/ Kenneth I. Schacter
(admitted *pro hac vice*)
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178-0060
(212) 309-6000

Jason R. Scherr
D.C. Bar No. 466645
Morgan, Lewis & Bockius LLP
2020 K Street, NW
10th floor
Washington, DC 20006
(202) 373-6000

*Counsel for Defendants*