UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|                            | ) |                                    |
|----------------------------|---|------------------------------------|
| JOHN DOE, *et al.*,        | ) |                                    |
|                            | ) |                                    |
|     Plaintiffs, | ) |                         |
|                            | ) |                                    |
| v.                         | ) | Civil Action No. 16-253 (RMC)      |
|                            | ) |                                    |
| BANK OF AMERICA            | ) |                                    |
| CORPORATION, *et al.*,     | ) |                                    |
|                            | ) |                                    |
|     Defendants. | ) |                         |
|                            | ) |                                    |

**OPINION**

John Doe, "a well-known international figure with a political background," and his daughter, Jane Doe, sue the Bank of America Corporation for negligence and breach of contract (Counts I and II) because, after Mr. Doe's 34-year personal banking relationship with Bank of America, both his and his daughter's accounts were summarily closed.[1] Mr. Doe claims damage to his reputation, alleging that the abrupt and unexplained closing of his account may suggest to international corporations on whose boards he might serve, that he was engaged in

---

[1] Compl. [Dkt. 1] ¶ 3. Before this case was transferred to the present Judge, plaintiffs sought permission, in a one-paragraph motion, to use pseudonyms because John Doe "sits on numerous boards of prominent international business entities" and "[h]aving his name published would damage the relationship he has with those entities." First Mot. to Use Pseudonyms [Dkt. 2] at 1. Former Chief Judge Richard W. Roberts denied the motion for failure to "cite or provide any analysis of the factors that this Court uses to weigh 'one party's need for anonymity against the public's right of access to court proceedings and the risk of unfairness to the opposing party.'" 3/1/2016 Order [Dkt. 3] at 1 (quoting *Doe v. Teti*, No. 15-1380, 2015 WL 6689862, at *1 (D.D.C. Oct. 19, 2015)). Plaintiffs filed a motion for reconsideration analyzing the relevant factors, Mot. for Reconsideration [Dkt. 4], which Chief Judge Beryl Howell reviewed and granted "upon finding that the plaintiffs have articulated a substantial reason to maintain the privacy of their names that 'outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings.'" 4/28/2016 Order [Dkt. 5] at 3 (quoting *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 188 (2d Cir. 2008)).

1

illegal financial activities, such as money laundering, which he vehemently denies. *See* Compl., Introduction. Plaintiffs demand an explanation and money damages "for the embarrassment, reputational damage, and business-related damages" they have suffered.[2] *See id*. ¶¶ 21, 27. Defendant, Bank of America Corporation, moves to dismiss the complaint. *See* Mot. to Dismiss [Dkt. 14].

The Complaint initially named Merrill Lynch, presumably Merrill Lynch, Pierce, Fenner & Smith, Inc., as a Defendant. In the Opposition, however, Plaintiffs agree to dismiss all allegations against Merrill Lynch (Counts III and IV) with prejudice. *See* Opp'n [Dkt. 16] at 2-3 ("In the interest of judicial expediency, Plaintiff agrees to drop Counts III and IV against Defendant Merrill Lynch with prejudice."). The Court will dismiss Plaintiffs' remaining counts against the Bank of America Corporation for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

## I. FACTS

John Doe is an American citizen and a resident of Florida. His daughter, Jane Doe, is an American citizen and a resident of Georgia. Plaintiffs bring this suit against Bank of American Corporation (BAC)[3] as "an attempt by an experienced world diplomat to ascertain the

---

[2] Plaintiffs' reliance on Mr. Doe's long-standing banking relationship and international status to support this suit calls into question whether Ms. Doe has made any viable claims. Indeed, Plaintiffs' Complaint and Opposition often refers to "Plaintiff" in the singular and "Mr. Doe," leading Bank of America Corporation to argue that Mr. Doe "effectively admits that Jane Doe has no valid claims." Reply [Dkt. 17] at 2. Because the Court ultimately finds no viable claims for either Plaintiff, there is no need to address this argument.

[3] As further explained below, BAC is a holding company that, at the time of Plaintiffs account closures, indirectly owned Bank of America, N.A. (BANA). BANA is a nationally chartered retail bank at which Plaintiffs were retail customers for years. Plaintiffs attribute actions to BAC that should more appropriately be attributed to BANA. However, because BAC is the only named Defendant in this action, and for purposes of clarity, the Court will describe the facts as done by Plaintiffs, who make allegations against BAC and not BANA.

2

reason why the banking relationship he had with [BAC] was summarily terminated even though he had an excellent 34-year banking record with them." Compl., Introduction. "The only reason Plaintiff has filed this lawsuit is [BAC's] adamant refusal to tell him the reasons why his account was closed." *Id.* Therefore, "certain parties (like international conglomerates seeking the services of reputable board members like [Mr. Doe]) . . . [may] speculate that [Mr. Doe] had engaged in or was complicit in money-laundering activities." *Id.*

Mr. Doe states that during his 34 years of a continuous banking relationship with BAC, "[t]here were no incidents of bounced checks or incidents of misdirected wire transfers, and no need to generate any Suspicious Activity Reports (SARs) in connection with activity in either [his or his daughter's] account." *Id.* ¶ 8. "On March 23, 2015, [Mr. Doe] received notice of his [BAC] account's closure, with no reason cited." *Id.* ¶ 9. Jane Doe's account was "closed at the same time" without explanation. *Id.* "After much difficulty, explaining, and frustration, Plaintiff John Doe was finally able to transfer his funds to J.P. Morgan Chase, where he now has an account." *Id.* ¶ 10.

The Complaint alleges that BAC received information during 2014 from "a newspaper clipping or an inquiry from the U.S. Department of Treasury's Financial Crimes Enforcement Network (FinCEN) or another financial institution like Merrill Lynch[,] . . . [which] appeared to implicate [Mr. Doe] in potential illicit activity." *Id.* ¶ 12. Plaintiffs complain that BAC summarily closed their accounts with no effort to inform them of the accusations against Mr. Doe or investigate them. Plaintiffs allege that "the bank should have immediately contacted [Mr. Doe] and investigated the matter in a comprehensive manner . . . to ascertain the veracity of the allegations of misconduct made about him." *Id.* ¶ 13. Through these actions and inactions BAC is alleged to have violated its "duty to act with reasonable care at all times . . . [b]y closing

3

the accounts before affording [Mr. Doe] an opportunity to explain any alleged wrongdoing disclosed to the bank by federal authorities or other sources." *Id.* ¶ 15. Plaintiffs allege that:

> [BAC] decided not to investigate the spurious charges because: (a) [Mr. Doe] maintained a home outside of America where money-laundering guidelines were not as stringent as in America; (b) there were additional requirements to maintain this account since he was a politically exposed person ("PEP"), i.e., SARs would have to be prepared and sent to Treasury on a regular basis; and (c) [BAC] knew because monthly SARs would have to be prepared that there would be an ongoing additional administrative expense to maintain these accounts.

*Id.* ¶ 16. In so doing, BAC allegedly breached its covenant of good faith and fair dealing with Plaintiffs because it chose the less-expensive alternative of unilaterally closing their accounts without investigation and without informing them of its reasons. *See id.* Plaintiffs seek a court order requiring BAC to explain in writing why it closed their accounts and a monetary award to compensate "for the embarrassment, reputational damage, and business-related damages" suffered. *Id*. ¶¶ 21, 27.

BAC responds that that "[t]he Complaint is devoid of any facts alleging any kind of cognizable relationship at all, contractual or otherwise, between Plaintiffs and BAC." Mot. to Dismiss at 8. It explains that BAC is a holding company that, at the time of Plaintiffs' account closures, indirectly owned BANA, which is a nationally chartered bank based in North Carolina with retail banking centers throughout the country. *See id*. at 2-3. The relevant bank accounts were opened at BANA, not BAC, and the documents governing those accounts were between Plaintiffs and BANA. *See id*. at 8; Reply, Ex. 3, BANA Deposit Agreement and Disclosures Feb. 6, 2015 [Dkt. 17-3] (2015 BANA Agreement); Reply, Ex. 1, BANA Deposit Agreement

and Disclosures June 19, 2010 [Dkt. 17-1] (2010 BANA Agreement).[4] BANA is not a named defendant in this action. BAC urges the Court to dismiss the Complaint against BAC on this basis alone. *See* Mot. to Dismiss at 8.

Plaintiffs request leave to amend the Complaint against BAC "or against [BANA] if that is deemed necessary by the Court as the proper named party against whom these claims should be asserted." Opp'n at 3. The Court will grant BAC's Motion to Dismiss and will deny Plaintiffs' request to amend because, upon analysis, such an amendment would prove futile.

## II. LEGAL STANDARDS

### A. Motion to Dismiss

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face. Fed. R. Civ. P. 12(b)(6). A complaint must be sufficient "to give a defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Although a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. A court must treat the complaint's factual allegations as true, "even if doubtful in fact," *id.*, but a court need not accept as true legal conclusions set forth in a complaint, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face."

---

[4] Defendants attached to their pleadings a 2011 version of the Deposit Agreement and Disclosures but portions are illegible in the version provided to the Court. *See* Reply, Ex. 2, BANA Deposit Agreement and Disclosures Aug. 1, 2011 [Dkt. 17-2]. The Court will therefore rely on the 2010 and 2015 versions of the Agreement which appear substantially similar to that of 2011.

5

*Twombly*, 550 U.S. at 570. A complaint must allege sufficient facts that would allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678-79.

In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

### B. Motion to Amend

If a plaintiff wants to amend a complaint more than "21 days after service of a responsive pleading" it may only do so "with the opposing party's consent or the court's leave." Fed. R. Civ. P. 15(a). Rule 15 instructs courts to "freely give leave when justice so requires," *id*; nevertheless, "the grant or denial of leave to amend is committed to a district court's discretion." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)). The Supreme Court has stressed that leave to amend should be freely given "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Forman*, 371 U.S. at 182, *accord Miller v. Gray*, No. 13-2018, 2016 WL 8671830, at *2 (D.D.C. Dec. 16, 2016). "The Court may deny leave to amend based on futility 'if the proposed claim would not survive a motion to dismiss.'" *Berry v. Coastal Int'l Sec. Inc.*, No. 12-1420, 2015 WL 13216805, *2 (D.D.C. July 24, 2015) (quoting *Rumber v. District of Columbia*, 598 F. Supp. 2d 97, 102 (D.D.C. 2009)). A court may also deny a motion to amend

"where the only result would be to waste time and judicial resources." *Ross v. DynCorp*, 362 F. Supp. 2d 344, 364 n.11 (D.D.C. 2005).

### III. ANALYSIS

#### A. Motion to Dismiss

Plaintiffs bring two claims against BAC for negligence and breach of contract. BAC has moved to dismiss these claims for failure to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6), noting that the banking relationship described in the Complaint is between Plaintiffs and BANA, a retail bank indirectly owned by BAC, and not between Plaintiffs and BAC.

"It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (quoting Douglas & Shanks, *Insulation from Liability Through Subsidiary Corporations*, 39 Yale L.J. 193 (1929)). A parent corporation can be held directly liable if the alleged wrong can be traced to the parent corporation or "'the parent is directly a participant in the wrong complained of.'" *Id*. at 64 (quoting Douglas & Shanks at 208). In the absence of direct liability, parent corporations may be held derivatively liable for a subsidiary's actions and plaintiffs may pierce the corporate veil when "the corporate form would otherwise be misused to accomplish certain wrongful purposes, most notably fraud." *Id*. at 62.

On a motion to dismiss, "the complaint is construed liberally in the plaintiffs' favor, and [the Court] grant[s] plaintiffs the benefit of all inferences that can be derived from the facts alleged," but "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp*., 16 F.3d 1271, 1276 (D.C. Cir. 1994). Plaintiffs have pled no facts under either a direct or derivative theory of liability and advanced no alternative theories under which BAC could be found liable.

7

The bank agreement governing Plaintiffs' accounts makes clear that the relevant banking relationship was with BANA, not BAC: "In this agreement, 'Bank of America', 'Bank', 'we', 'us' and 'our' means Bank of American, NA." 2015 BANA Agreement at 1; *see also* 2010 BANA Agreement at 1 (identical language). The Personal Signature Cards signed by Plaintiffs indicated that by signing they "agree that this account is and shall be governed by the terms and conditions set forth in . . . the Deposit Agreement and Disclosures." Reply, Ex. 4, John Doe Sig. Card [Dkt. 17-4]; Reply, Ex. 5, Jane Doe Sig. Card [Dkt. 17-5]. In light of Plaintiffs failure to provide any facts to support a claim against BAC, the Motion to Dismiss will be granted.

**B. Motion to Amend**

Plaintiffs request leave to file an amended complaint to detail their claims against BAC or BANA more fully "if that is deemed necessary by the Court as the proper named party against whom these claims should be asserted." Opp'n at 3. Because Plaintiffs' claims fail even if the Court construes Counts I and II as against BANA, an amendment to their Complaint would be futile.

When adjudicating common law claims, the Court applies the law of the forum state, *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."). In diversity cases, such as this one, federal courts apply the choice of law rules of the jurisdiction in which they sit. *See Chambers v. NASA Federal Credit Union*, 222 F. Supp. 3d 1, 7 (D.D.C. 2016). Under District of Columbia law, "[t]he general rule is that parties to a contract may specify the law they wish to govern, as part of their freedom to contract, as long as there is some reasonable relationship with the state specified." *Norris v. Norris*, 419 A.2d 982, 984 (D.C. 1980).

The BANA Agreements from both 2010 and 2015 provide: "This Agreement, and your and our rights and obligations under this Agreement, are governed by and interpreted according to federal law and the law of the state where your account is located." 2015 BANA Agreement at 2; 2010 BANA Agreement at 2. The Deposit Agreements further stated: "We ordinarily maintain your account at the banking center where we open your account. However, we may transfer your account to another banking center in the same state or in a different state." *Id*.

Plaintiffs do not reveal where the BANA banking centers maintaining their accounts were located. In the Complaint they suggest, without explanation, that the BANA Agreement should be interpreted under either Georgia or California law, Compl. ¶ 25, but in their Opposition rely on Georgia and Florida law, Opp'n at 11-12. Defendants infer, based on Plaintiffs' states of domicile, that the relevant bank accounts were maintained in Florida and Georgia and therefore rely on those states' laws. *See* Mot. to Dismiss at 9. The Court notes that the Personal Signature Cards signed by Plaintiffs indicate that John Doe's banking center was located in Maryland and Jane Doe's in Georgia, but cannot discern whether those are the states in which the Does' accounts were located at the time they were closed.

Despite the lack of clarity on the relevant state law, the standards for negligence and breach of contract remains sufficiently similar across the relevant states to avoid the need for a conflict of laws analysis and to convince the Court that a claim against BANA for negligence would fail regardless of the applicable state law.

1. **Negligence**

Under Georgia, Florida, Maryland, and California state law, a negligence claim has four elements: (1) a duty; (2) breach of that duty; (3) causation; and (4) damages. *See Ileto*

*v. Glock*, 349 F.3d 1191, 1203 (9th Cir. 2003) ("In order to establish negligence under California law, a plaintiff must establish four required elements: (1) duty; (2) breach; (3) causation; and (4) damages."); *Vason v. Bd. Of Edu. Of Montgomery Cty.*, No. 15-2228, 2017 WL 412528, at *2 (D. Md. Jan. 31, 2017) ("To establish a prima facie case for negligence under Maryland law, a plaintiff must prove: (1) the defendant owed a duty to protect the plaintiff from injury; (2) the defendant breached that duty; (3) the plaintiff suffered an injury; and (4) the defendant's breach was the proximate cause of the injury."); *Bartsh v. Costello*, 170 So. 3d 83, 86 (Fla. Dist. Ct. App. 2015) ("A negligence claim has four elements: (1) a duty by defendant to conform to a certain standard of conduct; (2) a breach by defendant of that duty; (3) a causal connection between the breach and injury to plaintiff; and (4) loss or damage to plaintiff."); *Goldstein, Garber & Salama, LLC v. J.B.*, 797 S.E.2d 87, 89 (Ga. 2017) (citations and internal quotation marks omitted) ("It is well established that to recover for injuries caused by another's negligence, a plaintiff must show four elements: a duty, a breach of that duty, causation and damages.").

Essential to a successful negligence claim is the existence of a legally enforceable duty, which Plaintiffs allege is a duty to act with reasonable care that encompasses "a duty . . . to investigate" charges made against Mr. Doe and to "determine whether they were bona fide." Compl. ¶¶ 15, 20. Plaintiffs root the source of this duty in Mr. Doe's "sterling 34-year relationship" with BAC "and his international status, i.e., Plaintiff John Doe is held in high regard all over the world." Compl. ¶ 20.

The BANA Agreement acknowledges a duty of ordinary care toward Plaintiffs. 2015 BANA Agreement at 2; 2010 BANA Agreement at 2 ("We owe you . . . a duty of ordinary care."). Georgia, Florida, Maryland, and California have all adopted the Uniform Commercial

Code's definition of "ordinary care," which "in the case of a person engaged in business means [1] observance of reasonable commercial standards, [2] prevailing in the area in which the person is located, [3] with respect to the business in which the person is engaged." U.C.C. § 3-103(a)(9) (2002); Cal. Com. Code § 3103(a)(7) (West 2007); Fl. Stat. Ann. § 673.1031(1)(g) (West 1992); Ga. Code Ann. § 11-3-103(a)(7) (2016); Md. Code Ann., Com. Law § 3-103(a)(7) (West 2012).

Plaintiffs provide no facts to support their assertion that reasonable commercial standards in any relevant state require banks to investigate totally external information that impedes their banking relationship or to provide customers an opportunity to respond to that information before a bank account may be closed, with prior notice, as here. Nor do Plaintiffs point to any industry standard requiring banks to provide reasons for the closure of an account. Contrary to Plaintiffs assertions that BANA owed them such a duty, the BANA Agreement explicitly provided for either BANA or its customer to close a bank account "at any time without advance notice." 2015 BANA Agreement at 2; 2010 BANA Agreement at 2. Plaintiffs' claim of negligence cannot be saved by amendment adding BANA as a defendant.

2. **Breach of Contract**

The elements for a breach of contract claim vary slightly under California, Florida, Georgia, and Maryland law, however, all jurisdictions require as an essential element of the claim that the plaintiff demonstrate a valid contract that was breached. *See Oasis W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011) ("[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff."); *Abbott Labs., Inc. v. Gen. Elec. Capital*, 765 So. 2d 737, 740 (Fla. Dist. Ct. App. 2000) ("The elements

11

of a breach of contract are: (1) a valid contract; (2) a material breach; and (3) damages."); *Layer v. Clipper Petroleum, Inc.*, 735 S.E.2d 65, 69 (Ga. Ct. App. 2012) (citation and internal quotation marks omitted) ("The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken."); *RRC Northeast, LLC v. BAA Maryland, Inc.*, 994 A.2d 430, 442 (Md. 2010) ("[A] plaintiff need only allege the existence of a contractual obligation owed by the defendant to the plaintiff, and a material breach of that obligation by the defendant.").

While all four states recognize an implied duty of good faith and fair dealing, under Florida, Georgia, and Maryland law, a claim for breach of an implied duty of good faith and fair dealing is not an independent cause of action. *See Ins. Concepts & Design, Inc. v. Healthplan Servs., Inc.*, 785 So. 2d 1232, 1234 (Fla. Dist. Ct. App. 2001) ("[A] claim for breach of the implied covenant of good faith and fair dealing cannot be maintained under Florida law absent an allegation that an express term of the contract has been breached."); *Stuart Enters. Int'l, Inc. v. Peykan, Inc.*, 555 S.E.2d 881, 884 (Ga. Ct. App. 2001) ("[T]he failure to act in good faith in performing a contract does not create an independent cause of action."); *Mount Vernon Props., LLC v. Branch Banking And Tr. Co.*, 907 A.2d 373, 381 (Md. Ct. Spec. App. 2006) ("[T]here is no independent cause of action at law in Maryland for breach of implied covenant of good faith and fair dealing."). The duty merely obliges contracting parties "to exercise good faith in performing [their] contractual obligations; it does not obligate . . . affirmative actions" not required by the contract itself. *Parker v. Columbia Bank*, 604 A.2d 521, 531 (Md. Ct. Spec. App. 1992); *see also Hosp. Corp. of Am. v. Florida Med. Ctr., Inc*, 710 So. 2d 573, 575 (Fla. Dist. Ct. App. 1998) ("[A] duty of good faith must relate to the performance of an express term of the contract and is not an . . . independent term . . . which may be asserted as a source of

12

breach."); *Stuart Enters.*, 555 S.E.2d at 884 (citation and quotation marks omitted) (The implied covenant "is a doctrine that modifies the meaning of all explicit terms in a contract, preventing a breach of those explicit terms.").

Under California law, a claim for breach of an implied duty of good faith and fair dealing can exist independently of a breach of contract claim where defendant's actions may frustrate, if not technically breach, the express terms of a contract. *See Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1153 (1990). Nevertheless, even in California, as in Georgia, Florida, and Maryland, an implied covenant cannot be "invoked to override the express terms of the agreement between the parties." *Ins. Concepts & Design, Inc.*, 785 So. 2d at 1235; *see also Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*, 100 Cal. App. 4th 44, 55 (2002) ("[A]n implied covenant of good faith and fair dealing cannot contradict the express terms of a contract."); *Griffin v. State Bank of Cochran*, 718 S.E.2d 35, 43 (Ga. Ct. App. 2011) (citation omitted) ("There can be no breach of an implied covenant of good faith where a party to a contract has done what the provisions of the contract expressly give him the right to do."); *Blondell v. Littlepage*, 991 A.2d 80, 90-91 (Md. 2010) (holding that an implied duty is simply a recognition of conditions inherent in expressed promises).

Plaintiffs allege BANA breached an implied covenant of good faith and fair dealing, which would have necessitated: "(a) starting a dialogue with the source of the allegations . . . ; (b) ascertaining the bona fides of such accusations before shutting down the bank accounts; (c) calling in [Mr. Doe] to alert him to the nature of the accusations; and (d) starting a comprehensive investigation . . . and issuing a report to [Mr. Doe]." Compl. ¶ 25. Plaintiffs point to no contractual provision that has been breached, nor do they explain how the performance of any contractual provision has been frustrated. Furthermore, an express provision

13

of the BANA agreement allows for either party to close the account at any time and for any reason.  2015 BANA Agreement at 2; 2010 BANA Agreement at 2.  The Does' claim for breach of contract or breach of implied covenant of good faith would thus fail under any applicable state law even if they were to amend the Complaint to add BANA as a defendant.

### C.  Request for Additional Discovery

Finally, Plaintiffs seek discovery to locate the original contract, signed 34 years ago, which they surmise "probably has a higher duty of care standard to be applicable [to] Plaintiffs' negligence claims here."  Opp'n at 10.  Whether an earlier, and substantially different, contract existed is irrelevant in light of Plaintiffs' clear acceptance of the 2010 BANA Agreement, as evidenced by their signature cards (dated 10/13/2010 and 7/26/2011) agreeing "that this account is and shall be governed by the terms and conditions set forth in . . . the Deposit Agreement and Disclosures."  Reply, Ex. 4, John Doe Sig. Card; Reply, Ex. 5, Jane Doe Sig. Card.  The 2010 BANA Agreement further specifies:  "We may change this Agreement at any time.  We may add new terms.  We may delete or amend existing terms. . . .  When we change this Agreement, the then-current version of this Agreement supersedes all prior versions and governs your account."  2010 BANA Agreement at 2.  Again, Plaintiffs agreed to these explicit terms.

The Court finds that both Mr. and Ms. Doe were bound by the most current version of the BANA Agreement at the time their accounts were closed in 2015 and further discovery to uncover an older deposit agreement would not further their claims.  The Court further notes that, at the point of a motion to dismiss, a court's "role is not to speculate about which factual allegations are likely to be proved after discovery."  *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 70 (D.C. Cir. 2015) (citing *Twombly*, 550 U.S. at 556).  Plaintiffs must allege

14

sufficient facts for the Court to reasonably infer the misconduct alleged. *Iqbal*, 556 U.S. at 678-79. Plaintiffs have failed to do so here.

Having found that "'the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiencies'" of Plaintiffs' Complaint, the Court will dismiss Plaintiffs' claims against BAC with prejudice. *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (quoting *Jarrell v. Postal Serv.*, 753 F.2d 1088, 1091 (D.C. Cir. 1985)).

## IV. CONCLUSION

For the reasons articulated above, Defendants' Motion to Dismiss, Dkt. 14, shall be granted. Plaintiffs have failed to state a claim for negligence or breach of contract against Defendant Bank of America Corporation and have conceded all claims against Defendant Merrill Lynch, Pierce, Fenner & Smith, Inc. Amending the Complaint to name Bank of American, N.A. would be futile as a matter of law and the uncontested facts. A memorializing Order accompanies this Opinion.

Date: August 11, 2017

/s/
ROSEMARY M. COLLYER
United States District Judge